UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL W. BRAMKAMP,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

CASE NO. 13-cv-05851 RBL

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: July 11, 2014

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. Nos. 11, 15, 16).

After considering and reviewing the record, the Court finds that the ALJ properly rejected plaintiff's testimony by pointing to inconsistencies in the record regarding plaintiff's military service as well as inconsistencies between plaintiff's reports of left

hand weakness and objective clinical findings, and by noting that plaintiff received only conservative treatment for his impairments. The ALJ also properly rejected the opinion of plaintiff's treating physician that plaintiff should not work because that opinion was based in large part on plaintiff's subjective complaints, which were not credible. Therefore, this Court recommends that the ALJ's decision be **AFFIRMED**.

BACKGROUND

Plaintiff, PAUL W. BRAMKAMP, was born in 1962 and was 47 years old on the alleged date of disability onset of August 23, 2010 (*see* Tr. 168-69). Plaintiff has a Bachelor's of Science in business management and completed two additional years in international affairs before joining the Navy (Tr. 50). Plaintiff was honorably discharged after serving for over six years in the US Navy (Tr. 232, 408-11). Plaintiff has worked in retail sales and as a sales representative for communication equipment, equipment installer, cabinet maker supervisor/installer and employment interviewer (Tr. 63-64). Plaintiff is certified as an Emergency Medical Technician ("EMT"), and volunteered at a fire department and as an instructor for the Red Cross (Tr. 51-52). Plaintiff no longer volunteers because of his medical issues (Tr. 52, 209).

The ALJ determined that plaintiff has at least the severe impairments of "head trauma with residual loss of consciousness, cognitive impairment, chronic headaches, and cervical-spine degeneration (20 C.F.R. 404.1520(c))" (Tr. 12).

At the time of the hearing, plaintiff was living in a home with his wife of ten years (Tr. 51).

//

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr. 168-69). The application was denied initially and following reconsideration (Tr. 74-88, 90-104). Plaintiff's requested hearing was held before Administrative Law Judge Scott R. Morris ("the ALJ") on January 30, 2012 (*see* Tr. 27-72). On March 13, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 7-26).

On July 26, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in September, 2013 (*see* Dkt. No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on December 4, 2013 (*see* Dkt. Nos. 8, 9).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred in adversely assessing the plaintiff's credibility; (2) Whether or not the ALJ erred in rejecting the medical opinion of Rachelle J. Guinto M.D.; and (3) Whether or not the ALJ's errors were harmless (*see* Dkt. No. 11, p. 1).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1) Whether or not the ALJ erred in adversely assessing the plaintiff's credibility**

Plaintiff argues that the ALJ erred in finding plaintiff's testimony not credible. Dkt. No. 11, pp 2-8. While plaintiff raises many errors with the ALJ's credibility finding, the fact that some of the reasons for discounting plaintiff's credibility were improper does not render the ALJ's credibility determination invalid, as long as one of the reasons given for discounting plaintiff's credibility is clear and convincing and supported by substantial evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). When evaluating a claimant's credibility, the ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1283-84

(*citing Dodrill v. Shalala*, 12 F.3d 915, 917 (9th Cir. 1993); *Reddick*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Here, the ALJ offered several clear and convincing reasons, supported by substantial evidence to find that plaintiff's testimony was not credible (*see* Tr. 15-19). For example, the ALJ reasoned that plaintiff's statements regarding his time in the Navy were remarkably different from the military records plaintiff provided (Tr. 17-18). Among other inconsistencies, the ALJ pointed out that plaintiff's statement that he witnessed a massacre in Bosnia in 1994 while serving in the Navy, was inconsistent with plaintiff's Certificate of Discharge from Active Duty that showed no record of any foreign service (Tr. 17; *see also* Tr. 43-47, 232, 282, 408, 410). The ALJ also observed that the military education reported on plaintiff's discharge certificate was inconsistent with plaintiff's claims that he attended Russian language school and cryptostenographer training while in the Navy (Tr. 17; see also 36-38, 232, 267, 408-11).

An ALJ may use "ordinary techniques of credibility evaluation," such as considering any inconsistent statement in a claimant's testimony. *Tonapetyan*, 242 F.3d at 1147-48 (*citing Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989)("We see no reason why ordinary techniques of credibility evaluation should not be applied in SSA disability hearings. For example, if a claimant has a reputation as a liar, or has made prior statements inconsistent with his claim of pain, *or is found to have been less than candid in other aspects of his testimony*, that may be properly taken into account in determining whether or not his claim of disabling pain should believed.")(emphasis added). These inconsistencies between plaintiff's reports and plaintiff's discharge certificate made

plaintiff's testimony regarding aspects of his military service appear less than candid. The ALJ properly considered these inconsistencies when evaluating plaintiff's credibility. *See Tonapetyan*, 242 F.3d at 1147-48

Plaintiff argues that the ALJ's use of plaintiff's military records to discredit plaintiff's testimony was impermissible because it was not an "ordinary technique of credibility evaluation." Specifically, plaintiff argues that his overseas military service and military education was not related to his disability and, therefore, is extrinsic evidence probative of a specific incident of untruthfulness of the sort generally prohibited by the Federal Rules of Evidence. *See* Fed. R. Evid. ("FRE") 608(b). This Court disagrees.

The evidence relied on by the ALJ was not extrinsic evidence of the sort courts routinely prohibit under FRE 608(b). Inconsistent evidence regarding plaintiff's military service was already contained in the administrative record at the time of the ALJ hearing (*see* Tr. 36-47, 267, 282, 232). Plaintiff offered no objection to the admissibility of this evidence at the hearing (*see* Tr. 30-31).

Moreover, although plaintiff claimed disability based on a closed head injury incurred many years after his military service, plaintiff's statements to his treating physician regarding his military service were relevant to that source's medical opinion regarding plaintiff's functional limitations. Approximately three months after plaintiff's alleged disability onset date, plaintiff's primary care physician Rachelle J. Guinto, MD, wrote, "[in] terms of his anxiety, [plaintiff] did report that he saw a psychiatrist when he came from Bosnia after seeing a massacre in 1994… I would advise referring [plaintiff]

to a psychiatrist as well." Dr. Guinto also wrote, "[at] the present time, [plaintiff] and his wife are advised that [plaintiff] should refrain from working until we get a proper diagnosis of seizure disorder or organic brain disease, as well as possibly having a component of [post traumatic stress disorder ("PTSD")]." (Tr. 282). Dr. Guinto's opinion and recommendations were based, at least in part, on plaintiff's report that he witnessed a massacre while serving in Bosnia. The ALJ's use of these inconsistencies to reject plaintiff's testimony was permissible. *See Tonapetyan*, 242 F.3d at 1147-48.

Additionally, the ALJ noted that there were no medical reports to support plaintiff's complaint that his left grip strength had weakened considerably during the year and a half prior to his hearing (Tr. 18, 54). A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Comm'r of the Soc. Sec. Admin*, 166 F.3d 1294, 1297 (9th Cir. 1998). For example, objective testing by plaintiff's primary care physician Dr. Guinto indicated plaintiff's left grip strength remained consistent during the relevant period (Tr. 16-17, 279, 281-82, 369, 395 (consistently noting motor tone in left upper extremity was at 4/5)). Moreover, upon examination, plaintiff's neurologist Dr. Iosso found that plaintiff's muscles—including his left upper extremity—were normal in bulk, tone and *strength* (*See* Tr. 17 (*citing Tr. 388*); *see also* Tr. 381 (motor function was intact and symmetric), 384 (muscles were normal in bulk, tone and strength)) (emphasis added). Contrary to plaintiff's complaints, Dr. Iosso's findings tend to support improvement in plaintiff's grip strength, not weakening and, most importantly, are inconsistent with

plaintiff's testimony. This is another clear and convincing reason for questioning plaintiff's credibility that is supported by substantial evidence.

The ALJ also noted that despite plaintiff's subjective complaints, the medical record reflects that plaintiff received only conservative treatment for his impairments (Tr. 18). *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment to be suggestive of a lower level of pain and functional limitation). For example, although plaintiff reported neck pain, plaintiff did not use the neck brace he was given (Tr. 18; *see* Tr. 53, 55). Also, no doctor recommended surgery for plaintiff's cervical spine degeneration (Tr. 18). Similarly, although plaintiff was being treated by a neurologist for his headaches and possible seizures, plaintiff only saw his neurologist once every two months, which, as the ALJ pointed out, does not indicate urgency (Tr. 17-18; *see* Tr. 56, 381-97).

The ALJ offered several clear and convincing reasons, supported by substantial evidence to reject plaintiff's testimony. *Smolen*, 80 F.3d at 1283-84. Because the ALJ's findings were supported by substantial evidence, any additional errors in the ALJ's credibility analysis do not render the ALJ's credibility determination invalid. *See Tonapetyan*, 242 F.3d at 1148. For this reason, the undersigned recommends that the ALJ's assessment of plaintiff's credibility be affirmed.

(2) **Whether or not the ALJ erred in rejecting the medical opinions of Rachelle J. Guinto M.D.**

Plaintiff also argues that the ALJ erred in rejecting the medical opinion of his primary care physician, Dr. Guinto, that plaintiff should stop working due to his

blackouts. Dkt. No. 11, pp 8 (*citing* Tr. 282). The ALJ rejected Dr. Guinto's opinion for two reasons: (1) it was not supported by Dr. Guinto's limited physical evaluation; and (2) the opinion was made without the benefit of a diagnosis or comprehensive testing, and therefore was based mostly on plaintiff's subjective complaints, which were not entirely credible (Tr. 20). These are specific and legitimate reasons supported by substantial evidence sufficient to reject the opinion of a treating source. *See Lester*, 83 F.3d at 830-31.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick*, 157 F.3d at 722 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample*, 694 F.2d at 642 (*quoting Waters*, 452 F.2d at 858 n.7 (*citing Calhoun*, 626 F.2d at 150)). It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)).

Approximately three months after plaintiff's alleged disability onset date, Dr. Guinto wrote: "At the present time, [plaintiff] and his wife are advised that [plaintiff] should refrain from working until we get a proper diagnosis of seizure disorder or organic brain disease, as well as possibly having a component of PTSD." (Tr. 282). However, as

the ALJ observed, at the time of the hearing, plaintiff's diagnosis of seizures still had not been confirmed, nor had plaintiff obtained any mental health treatment (*see* Tr. 18-19).

Although plaintiff's treating physician opined that he should not work, "the ultimate determination" as to whether a claimant is disabled is reserved to the Administration, and thus "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean" that he or she will be found to be disabled. 20 C.F.R. § 404.1527(d)(1). *See Magellanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (The ALJ appropriately may decline to accept even a treating physician's opinion regarding a claimant's condition, vocational outlook, or even "the ultimate issue of disability," if supported by the record).

As discussed in greater detail above, the ALJ properly rejected plaintiff's testimony. The opinion of a physician premised on a claimant's own account of his symptoms and testing within a claimant's control may be disregarded where the claimant's complaints have been properly discounted. *See Tonapetyan*, 242 F.3d at 1149 (finding that when the record supports discounting a claimant's credibility, a doctor's reliance only on the claimant's subjective complaints and testing within the claimant's control is a specific and legitimate reason to reject that doctor's opinion); *see also Morgan*, 169 F.3d at 601 (finding that the opinion of a physician premised to large extent on a claimant's own account of her symptoms and limitations may be disregarded where those complaints have been properly discounted).

The ALJ noted that Dr. Guinto's opinion that plaintiff should not work was based on a limited evaluation of plaintiff's neurological symptoms (*see* Tr. 20). This

evaluation included shoulder shrug, finger to nose, range of motion and grip strength testing (*see* Tr. 281-82). Based on these tests, Dr. Guinto observed plaintiff had dysmetria, or incoordination, and lack of strength on the left (see Tr. 282). Dr. Guinto recommended additional objective testing, including magnetic resonance imaging ("MRI") and electroencephalogram ("EEG") testing, be completed, as well as a neurologic evaluation, to determine the etiology of plaintiff's reported symptoms (Tr. 282). Plaintiff was later evaluated by neurologist Dr. Iosso (*see* Tr. 387-88), Dr. Iosso's neurology consultation, in contrast to Dr. Guinto's evaluation, revealed only "subtle findings", slight incoordination and normal strength on the left (*see* Tr. 17, 388).

As the ALJ noted, Dr. Guinto's limited physical evaluation did not reveal the cause of plaintiff's reported blackouts (*see* Tr. 20, 281-82). Furthermore, Dr. Guinto's opinion was rendered without the benefit of comprehensive objective testing or diagnosis (*see* Tr. 281-82). The ALJ's conclusion that Dr. Guinto's opinion was based primarily on plaintiff's subjective complaints was supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)("Substantial evidence" is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). For these reasons, this Court recommends that ALJ's rejection of Dr. Guinto's medical opinion be affirmed. *See Tonapetyan*, 242 F.3d at 1149.

CONCLUSION

The ALJ properly rejected plaintiff's testimony and properly rejected the opinion of plaintiff's treating physician, which was premised in large part on plaintiff's subjective

complaints. Based on these reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 11**,** 2014, as noted in the caption.

Dated this 12th day of June, 2014.

J. Richard Creatura
United States Magistrate Judge